HEARD NOVEMBER TERM, 1873.

## CHARLESTON *vs.* PEOPLE'S NATIONAL BANK.

Where a national bank voted to increase its capital stock, and the requisite number of new shares were subscribed and paid for before the 1st January, 1872, and a semi-annual dividend, declared as of that day, was paid upon the new shares, as well as the old, but such increase of capital was not approved by the Comptroller of the Currency, nor his certificate issued until the 5th January, 1872: *Held*, That such new shares were not the subjects of taxation under an ordinance imposing a tax on bank shares "in the hands of the tax-payers on the 1st January, 1872."

There can be no increase of the capital of a national bank until the Comptroller of the Currency approves thereof and issues his certificate, as provided by § 13 of the Act of Congress providing for the organization of national banks.

BEFORE GRAHAM, J., AT CHARLESTON, DECEMBER TERM, 1873.

Case agreed upon in a controversy submitted without action.

The City Council of Charleston claims to recover of the stock-holders of the People's National Bank $6,312.50.

The following are the facts upon which said controversy depends:

1. That the City Council of Charleston is a municipal corporation under the laws of the State of South Carolina, "with power and authority to make such assessments on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit and advantage of the said city, as shall appear to them expedient."

2. That an Ordinance to raise supplies for the year 1872, ratified on the           day of           1872, by said City Council, imposed a tax of two per cent. upon the taxable property within said city, in the hands of tax-payers, on 1st January, 1872.

3. That the People's National Bank, a banking association within the limits of the city of Charleston, organized under the laws of the United States, on the 12th day of February, 1872, returned seven thousand five hundred shares, valued at one hundred dollars each, as in the hands of its stockholders, subject to taxation, upon which, after deducting value of real estate and city stock, at $23,440, a tax of two per cent. was duly assessed by the City Appraiser, and the same has been duly paid by said bank for its stockholders, pursuant to Section 28 of Ordinance of February 10, 1870.

4. That, on the first day of July, A. D. 1871, said banking association voted to increase the number of shares of capital stock in said bank to one thousand, subject to the approval of the Comptroller of Currency. Between 1st July, 1871, and 1st January, 1872, said two thousand five hundred additional shares were duly subscribed, and the amount thereof, two hundred and fifty thousand dollars, was secured to be paid to said banking association, and the securities were held by the Cashier in trust for it. The said banking association declared and paid a semi-annual dividend upon all of its said stock, including said increase of two thousand five hundred shares, on the 7th day of January, A. D. 1872, for the half year ending January 1, 1872.

5. That the subscribers to said additional shares of stock did receive certificates of stock representing the same after the 2d January, 1872.

6. That on the 15th day of June, A. D. 1872, said banking association, having failed to return said additional shares for taxation to the City Council, the City Appraiser, pursuant to Sections 29 and 38 of the Ordinance of the city of February 10th, 1872, proceeded to list said two thousand five hundred shares of stock for taxation, and fixed the value thereof at one hundred dollars per share, amounting, in all, to two hundred and fifty thousand dollars, and levied, pursuant to Ordinance of City Council, of the           day of           A. D. 1872, a tax of two per cent. thereon, which tax amounted to the sum of five

thousand dollars, which, not having been paid at the times required by Ordinance, is subject to a penalty of twenty per cent. for non-payment, pursuant to Section 48 of the Ordinance of February 10th, 1872, amounting to one thousand dollars. There has been a school tax assessed, by the Charleston City Board of School Commissioners, of three hundred and twelve dollars and fifty cents, ($312.50,) to be collected by the City Council of Charleston, and if said stock is taxable the same is now due to plaintiff.

7. The said banking association did not obtain leave of the United States Comptroller of Currency to increase its capital stock till after the first day of January, 1872; and the Comptroller of Currency refused to recognize any increase of the capital stock of the bank until the fifth day of January, 1872; and, the third day of January, 1872, said banking association returned to the Comptroller of Currency, at Washington, only seven thousand five hundred shares as the amount of its capital stock, subject to taxation by the general government, paid the tax thereon, and the said return and payment were accepted by the said Comptroller.

The question submitted to the Court is: Had the City Council a right to levy the tax on the two thousand five hundred shares of stock, under the facts stated?

GRAHAM, J. This case is submitted to me upon an agreed statement of facts, under the provisions of Section 389 of the Code of Procedure.

The case having been fully argued before me, by D. T. Corbin, Esq., City Attorney, on the part of the City Council, and Charles H. Simonton, Esq., on the part of the People's National Bank, and, after full consideration, I am of opinion that the City Council had a right to levy the tax on the two thousand five hundred shares of stock of said bank, as claimed.

It is, therefore, ordered, that judgment be entered against the defendant in the sum of six thousand three hundred and twelve dollars and fifty cents, with costs, and that the plaintiff have execution thereof.

The defendant appealed.

*Simonton,* for appellant:

The City Council of Charleston, by an Ordinance passed in Feb-

ruary or March, 1872, imposed a tax of two per cent. upon the taxable property within the city, in the hands of tax-payers cn the 1st January, 1872. The shares in the capital stock of the People's National Bank, in the hands of its stockholders, are taxable property. This bank, having an authorized capital of $750,000, divided into shares valued at $100 each, under the provisions of an Ordinance hereinafter specially referred to, made the return for its stockholders, and reported for taxation the number of its shares in their hands as seven thousand five hundred.

That on the first of July, 1871, this bank, by resolution, had determined to increase its capital, and had made application to the Comptroller of the Currency therefor, under an Act of Congress, which will be quoted hereafter. That subscriptions were received for such proposed increase of capital between July, 1871, and January, 1872, and the securities for such subscriptions were held by the bank, in the name of the Cashier, in trust. That on the fifth of January, 1872, the Comptroller of Currency gave his assent to the proposed increase of the capital stock by the addition of two thousand five hundred shares, and the certificates for these new shares were issued thereupon and consequent on such assent.

On 7th January, 1872, the bank declared a dividend on all of its shares, including these new shares. The question is, are these two thousand five hundred shares taxable under the tax Ordinance of 1872? or, in other words, were these two thousand five hundred shares taxable property in the hands of tax-payers on 1st January, 1872?

The subject-matter of the tax is the shares in the hands of the shareholders.

The Act of Congress providing for the organization of institutions known as national banks is to be found in second Brightley's Digest, 51.

This Act establishes in the Treasury Department a Bureau of Currency, which is charged with the execution of all laws passed by Congress respecting the issue and regulation of a national currency secured by United States bonds ; and the chief officer of the Bureau is denominated the Comptroller of the Currency, (Section 1.)

Before a national bank can be formed an organization certificate must be prepared and signed by the persons forming it, and acknowledged before some Judge of a Court of record or a Notary

Public, which, among other things, must specify the amount of its capital stock and the number of shares into which the same shall be divided. This organization certificate must be forwarded to the Comptroller of the Currency, who is directed by the Act to "record and carefully preserve the same in his office," (Section 5.)

When an increase in the capital stock is desired it can be done only as follows : " It shall be lawful for any association formed under this Act, by its articles of association, to provide for an increase of its capital stock from time to time, as may be deemed expedient, *subject to the limitations of this Act*, provided that the maximum of such increase in the articles of association shall be determined by the Comptroller of the Currency, and *no increase of capital shall be valid* until the whole amount of such increase shall be paid in, and notice thereof shall have been transmitted to the Comptroller of the Currency *and his certificate obtained, specifying the amount of such increase of capital stock, with his approval thereof*, and that it has been duly paid in as a part of the capital of such association," (Section 13.)

Two things, therefore, were essential to make valid the proposed increase of the capital stock of the People's National Bank, to authorize and call into existence the twenty-five hundred shares in question : the one was that the whole amount of the subscription should actually be paid in ; the other was that the certificate of the Comptroller of the Currency should be obtained, expressing his approval and specifying the amount of such increase of the capital stock. Until these conditions were complied with, especially until the certificate of the 'Comptroller, expressing his approval, was obtained, the whole matter was uncertain, incomplete, *in fieri*. Now the case states that the certificate of the Comptroller of the Currency was not obtained until the fifth of January, 1872, and therefore, until that day, the twenty-five hundred shares of new stock had no legal existence. So that, on the first day of January, 1872, these twenty-five hundred shares in no sense were taxable property within the city of Charleston in the hands of tax-payers.

The difficulty in the mind of His Honor the presiding Judge, who ruled on this question in the Court below, seems to have been that the bank was in possession of the money subscribed for the stock paid into its hands by the subscribers ; and that these subscribers, on 7th January, 1872, received a dividend.

Let us examine more closely this matter.

The practical operation of the resolution to increase the capital stock of the bank was this: Subscriptions were called for and were made from time to time. As the payments were made, or were secured to be made, the sums paid in were deposited, and the securities were held in the name of the Cashier, in trust. During the progress of the subscription it was impossible to say to whom the money so subscribed and paid in belonged, nor to whom it would belong.

Until all the proposed increase of stock was subscribed for, and all payments on the subscription were made, no application, as we have seen, could be made to the Comptroller of the Currency; and when these payments were made and the application forwarded to the Comptroller, his decision had to be obtained. It is scarcely necessary to say that the result of this decision was by no means certain. National banks can issue notes to the amount of ninety per cent. of their capital, and no more, (2 Brightley's Digest, p. 56, Section 21.) The entire amount of the whole issue of such bank notes is limited, and is proportioned among the several States, to each its specified quota, (*ibid*, Section 22.) By the original Act the total amount of the issue of national bank notes was fixed at three hundred million dollars. It is now three hundred and fifty-four million dollars. So the decision of the Comptroller depended on three conditions: First, whether the general limit to the entire issue of the national bank notes had been reached; second, whether the quota of this State had been exhausted; third, whether, in his opinion, it was more expedient to permit a bank already established to increase its capital than to reserve the privilege for some other bank in the city of Charleston or in another part of the State.

It was by no means certain, therefore, that these shares would ever be issued. In the meantime the bank used the money. It was a deposit in the bank, and, at the utmost, was a debt due by the bank to the depositor—the money constituting the property of the bank, (Morse on Banking, 24, 25.)

But it must be remembered that the tax is not on the bank as a corporation, but on the shares in the hands of the shareholders, as the property of such shareholders, and in no sense the property of the bank. Indeed, it is more than questionable whether these national banks can be taxed by the State, or under State authority, except upon the real estate owned by them. The 41st Section of

the Act of Congress, from which we have quoted so freely, (2 Brightley's, pp. 60, 61) after declaring what taxes shall be paid by these associations to the United States, has this proviso : " *Provided,* That nothing in this Act shall be. construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority, at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State : *Provided, further,* That the tax so imposed under the laws of any State upon the shares of any of the associations authorized by this Act shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the State where such association is located : *Provided, also,* That nothing in this Act shall exempt the real estate of the association from either State, County or municipal taxes, to the same extent, according to its value, as other real estate is taxed."

The same reasoning which is used in *McCulloch* vs. *Maryland,* (4 Wheaton, 316,) to exempt the Bank of the United States from State taxation, will exempt these banks, they also being the fiscal agents of the government.—See *Van Allen* vs. *Assessors,* 3 Wallace, 591, opinion of Chase, C. J.

The precise question was made in this State, and in the Court below the right of taxation on the part of the State was denied. The case was carried before the late Court of Appeals, and was argued as a constitutional question before the whole Court of Errors. Just before its dissolution a decision, we believe, was reached, but the opinion was not written. As a matter of curiosity, we have reason to know that the ruling below was sustained.

Be this as it may, in the present case the question cannot arise. There is no pretense that the bank, as a corporation, is taxed. The stockholders are taxed on their shares, and the bank, exercising its option, pays the tax for them. The Sections of the City Ordinance on this subject are as follows: "All companies and corporations, whether organized under the laws of this State or not, the manner of listing whose personal property is not otherwise specifically provided for by law, shall list for taxation all their personal property and effects at the same time, in the same manner, and in the same localities as individuals are required to list similar property and effects for taxation."—Sec. 22, p. 96, City Ordinances 1859–70.

"It shall be lawful for any such bank or banking association to pay to the City Treasurer the taxes that may be assessed on its shares, as aforesaid, in the hands of its shareholders, respectively, and deduct the same from any dividends that may be due, or may thereafter become due, on any such shares, or deduct the same from any funds in its possession belonging to any shareholder, as aforesaid."—Sec. 28, p. 97.

Again, the shares are taxed according to their par value, without regard to dividend. The share itself, not the income, is taxed. Be this more or less, it makes no difference to the assessor. The shares at par are one hundred dollars, and are assessed and taxed at this amount. If, therefore, it be admitted, which, indeed, it is impossible to deny, that these twenty-five hundred shares were not in existence on the first day of January, 1872, and, therefore, not the subject of taxation, and yet this tax be imposed because the bank had the money, this would be taxation of a deposit account in the bank under an Ordinance not imposing such a tax, in a mode not consistent with the Ordinance, and 'if either were the case it would be a tax on the bank itself, and such a tax would be contrary to law. In full confirmation of the position taken by us, is the action of the Comptroller of the Currency himself. On the 3d January, 1872, the People's National Bank sent off its statement to the Comptroller of the Currency, and in that statement returned seven thousand five hundred shares as the amount of its capital stock subject to taxation. This return was received by the Comptroller of the Currency, and the tax was paid on this amount of stock without objection.

We submit, therefore, that the decision of the Circuit Court should be reversed, and that judgment should be entered for the defendant.

*Minott,* City Attorney, *Corbin & Stone,* contra:

The People's National Bank, a banking Association doing business in the city of Charleston, on the 1st day of July, 1871, voted to increase its capital stock from seven hundred and fifty thousand to one million dollars. By the National Currency Act of June 3, 1864, Section 12, (2 Bright. Dig., 59, § 12,) the capital stock of national banking associations is divided into shares of one hundred dollars each.

The proposed increase of capital, therefore, would require the issue of two thousand five hundred additional shares of capital stock.

Between July 1, 1871, and January 1, 1872, this additional stock was subscribed for; the amount thereof, $250,000, was secured, to be paid by securities held by the cashier in trust for the purpose, and a semi-annual dividend was declared and paid on said additional stock for the half year ending January 1, 1872.

The question is, had the City Council of Charleston a right to levy a tax on the said two thousand five hundred additional shares of stock?

No question is raised by the bank as to general right of the city to tax the shares of stock in this bank, nor as to the validity of the Tax Ordinance for 1872, under which the city seeks to enforce the tax which the bank is now resisting.

The city bases its claim for taxation on the following grounds:

1. The action of the bank, in pursuance of which the capital stock was increased, was taken July 1, 1871.

2. The $250,000 additional capital was actually paid before January 1, 1872, (from which date the tax for 1872 was assessed) and the bank treated the money paid in by the subscribers to the additional stock as in payment of shares, and paid a semi-annual dividend for the half year ending January 1, 1872, upon such shares.

By Section 13 of the National Currency Act of June 3, 1864, (2 Brightley's Digest, p. 60,) provision is made for the increase of the capital of banking associations. The association makes the increase, the maximum of such increase being limited by the Comptroller of the Currency.

Such increase is not valid until the additional capital is paid, to which fact the Comptroller certifies, and which increase he by his certificate approves.

It would seem from the record in this case, that the Comptroller of the Currency made the certificate as to the actual payment of the additional capital, and expressed his approval of the increase, January 5, 1872.

The Comptroller's approval was a ratification of the action of the bank in increasing its capital, and was not the authority itself for the increase. The authority came from the Act of Congress. The Comptroller had simply to see that the provisions of the Act had been complied with. He could regulate the maximum amount

of increase, but the bank had otherwise complete control in the matter.

The record shows that the additional capital was entirely paid in before January 1, 1872; that it was made use of in the business of the bank; that it was earning interest; and that a like dividend for the six months preceding January 1, 1872, was paid to the subscribers to this additional capital as was paid to the holders of the shares in the original capital stock of the bank.

The additional capital thus paid in was, by Sec. 12 of the Currency Act, divided into 2,500 shares, of which shares the subscribers to the additional capital stock, respectively, were owners.

The bank, by paying the dividend on the additional capital, admitted the existence of such capital. There could not be capital without shares, and there could not be shares unless there were owners. The bank, therefore, by its own acts, has admitted the existence of the shares which the city seeks to tax, and those shares had been yielding the owners thereof a profit for the six months next preceding the 1st of January, 1872.

A share of stock is a right to partake, according to the amount of the party's subscription, of the surplus profits obtained from the use and disposal of the capital stock of the company, to those purposes for which the company is constituted. It is a mere demand for dividends as they become due.—Angell & Ames on Corporations, §§ 557, 560.

In this case the bank paid, on January 7, 1872, dividends on 10,000 shares of stock to the holders thereof, as their share of the surplus profits of the bank for the six months ending January 1, 1872. It returned for taxation only 7,500 shares. It must pay taxes on the balance of the shares in existence January 1, 1872.— *Van Allen* vs. *The Assessors*, 3 Wall., 584, 586, 587; *National Bank* vs. *Commonwealth*, 9 Wall., 359.

Escape from taxation is sought on the grounds—

1. That *certificates* of stock were not issued until after January 1, 1872.

2. That the Comptroller of the Currency had not approved the increase of capital until January 5, 1872.

*Reply to first objection:*

The taxation is upon *shares* of stock, not upon certificates of stock.

The certificate is only the evidence of ownership, not ownership itself.—*Mechanics' Bank* vs. *New York and New Haven R. R. Co.*, 13 N. Y., 627; *Van Allen* vs. *The Assessors*, 3 Wall., 573; dissenting opinion of Ch. Justice Chase, 598; *Hutchins, Adm'r.*, vs. *State Bank*, 12 Met., 426.

Whether or not the shares were in existence, is to be determined by the books of the bank. The books of the bank will show that a dividend was paid upon this additional number of shares; so, of course, they must have been in existence, whether *certificates* had been issued or not.

The fact that the bank had not issued certificates cannot affect the question of ownership.—*Brigham* vs. *Mead*, 10 Allen, 245.

The failure to issue the certificates until after January 1, 1872, may have been a device to evade the return of the shares for taxation.

*Reply to second objection:*

The Comptroller's certificate, on which reliance is placed, we have already shown was merely a ratification of what had been previously done, and was not the point on which the rights of the subscribers to the additional capital, or the right of the State or the city to tax hinged. These rights must be determined by the action of the bank, and not the action of the Comptroller.

As to the return made to the Comptroller of the Currency on the 3d of January, 1872, as to the amount of its capital stock subject to taxation.

This return is required by the 41st Section of the Currency Act. (2 Bright. Dig., 66, § 42.)

It purports to give the average amount of the capital stock *beyond the amount invested in United States bonds* for the six months next preceding the day on which it is due, and on the amount thus returned the bank pays a duty or tax to the General Government of one-quarter of one per centum.

Whether the return made by the People's Bank for the first of January, 1872, were correct or incorrect, whether it were accepted by the Comptroller or not, cannot affect this case. If the bank had one million dollars paid up capital on the first of January, 1872, then it had ten thousand shares of capital stock, subject to city taxation on that day, and should so have returned.

The payment of a semi-annual dividend on the amount of capital

is sufficient proof of the existence of the shares which contributed to make up that amount.

But the return to the Comptroller was probably correct.

It returned, as subject to taxation, seven thousand five hundred shares of capital stock—in other words, $750,000.

This amount must have been in excess of the amount of capital invested in United States bonds.

Section 16 of the Currency Act, (2 Bright. Dig., 60,) requires that at least one-third of the capital shall be invested in United States bonds, which the Treasurer of the United States has on deposit.

Capital stock of the Bank paid in up to July 1, 1871......$750,000
One-third invested in United States bonds..................... 250,000
Balance returnable for taxation by the General Government......................................................................... 500,000
Increase of capital between July 1, 1871, and January 1, 1872.......................................................................... 250,000
Liable to taxation by the General Government, January 1, 1872.......................................................................... 750,000

On this amount the bank paid to the Comptroller the tax of one-quarter of one per cent. provided by law.

We think we have shown that the Court below was right in determining the question submitted to it in the affirmative, and we ask this honorable Court to reiterate that answer.

Feb. 27, 1874.   The opinion of the Court was delivered by

Moses, C. J.   The single question presented by the case agreed upon in a controversy submitted without action between these parties is, whether the City Council of Charleston had a right to levy the tax on the twenty-five hundred shares of the stock referred to in the brief.

It is not necessary to repeat the facts on which our judgment is to be pronounced, for they are recited in the agreement which precedes this opinion.

The Ordinance of the City Council imposed the tax " on the shares in the hands of its shareholders, respectively," (Sec. 22, p. 96, City Ordinance, 1859–70), and if the shares upon which it is claimed the proposed tax is to operate can be comprehended within its terms the judgment of the Circuit Court must be affirmed.

The institution in question was established and organized as one of the national banks, under the Act of Congress of 3d June, 1864, "to provide a national currency secured," &c., (13 U. S. Statutes, 99.) For its formation it was necessary that a certificate should be prepared and filed with the Comptroller of the Currency at Washington, which should contain, among other things, a specification of the amount of its capital stock, and the number of shares into which it was to be divided. This is the evidence of the amount of such capital stock and its distribution into shares, and these last are then fixed, designated and known at the Bureau of Currency by the record preserved in the proper office thereof. The Act further provides by its 13th Sec., p. 103, "for an increase of the capital from time to time, provided that the maximum of such increase shall be determined by the Comptroller of the Currency; and no increase shall be valid until the whole amount of such increase shall be paid in, and notice thereof transmitted to the Comptroller, and his certificate obtained, specifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in as a part of the capital of such association."

The argument, on the part of the respondent, proceeds upon the ground that the proposed increase of the capital by the said twenty-five hundred shares was effected by the subscription to that extent, and the acceptance of certain securities therefor, held by the Cashier in trust for the association. If this is well founded, then the increase does not depend on a compliance with the conditions expressed in the Act of Congress, but on arrangements which the shareholders, originally organized under it, may make with third persons, in the face of the very law to which they owe the existence of their association, and under which, it is to be assumed, they are at least to carry out the obligations which it imposes. The error is in the attempt to give force to these shares as valid and properly constituted shares of the association, before the approval of the Comptroller, when, in point of fact, the increase of the capital depended upon it. The resolution on the first day of July, 1871, to increase the number of the shares, by its very terms, made it dependent on such approval. Until obtained, the capital remained as originally fixed. The act of the stockholders to that end was no more than a proposition among themselves, the effect of which was subject to the assent of the higher authority designated by the Act of Congress. A solution of the proposition may be tested by the

enquiry, whether, if before the 7th January, 1872, any one of the so-called stockholders could have required the association to issue a certificate for the shares so agreed to be taken by him. Only one answer could be given to it, and that, it appears to us, would conclude the respondent from imposing the tax, which must be upon shares of the capital stock, which, before the 7th January, 1872, was limited to the amount originally allowed by the certificate of organization.

It is supposed that these additional shares are subject to the tax because the $250,000 which they represented was actually paid before the 1st January, 1872, and a semi-annual dividend declared and paid on them for the half year then ending. The ordinance in question "imposed the tax on taxable property within the said city in the hands of tax-payers on 1st January, 1872."

The proposed increase of the capital was required by the Act of Congress to be paid in as a precedent condition, on the performance of which the approval of the Comptroller depended. If he had withheld it, the very requisite which was necessary to make the money deposited the medium through which the certificates of the additional shares could of right be demanded, was wanting.

That the money thus subscribed remained in possession of the bank, and that those who had advanced it, received on 7th January, 1872, a dividend for the half year ending on the first day of the said month, in common with the original stockholders, cannot affect the question. The original stockholders could apply the profits of the bank at their own pleasure, and if those who were interested in restricting the application of the dividends to the original stock do not complain, their want of objection can not convert what must be considered as mere proposals for stock into valid and legal shares. The tax is not on the dividend, but on the share. The view which the Comptroller of the Currency took of the liability of the said twenty-five hundred shares to the tax of the government is clear, from the fact that although the said banking association, on 3d January, 1872, returned to him, subject to taxation by the government, only seven thousand five hundred shares, he imposed no tax beyond them, and accepted the said return and payment as a compliance with the law.

While we are in no way bound by his decision, it cannot prejudice our conclusion, that the public officer charged by Congress with the duty of estimating the capital of these associations, on which

the U. S. tax was to be laid, on the same facts before him, with the knowledge of the further extension of the capital of this bank, did not exact any tax on the said twenty-five hundred shares.

The answer of the Court is, that the City Council of Charleston did not have the right to levy the tax on the twenty-five hundred shares under the facts stated.

The judgment of the Circuit Court is therefore reversed.

*Wright*, A. J., and *Willard*, A. J., concurred.